## NATHANIEL NEWCOMB vs. JANE PRESBREY.

On the trial of a real action, the demandant gave in evidence a deed of the demanded premises, made to him by A.: The tenant then offered in evidence an earlier deed of the same premises, made to him by A., and recorded subsequently to the recording of the demandant's deed; but the signature of A. thereto was erased, and was proved to have been erased before the deed was recorded: There was no evidence that the demandant, when he received his deed from A., knew that there was a valid subsisting conveyance from A. to the tenant; but there was evidence tending to show that the demandant, when he took his said deed, knew that the tenant had held a deed from A., which had been given up. *Held,* that the tenant's said deed was not admissible in evidence, without explanation of the erasure.

These words in the habendum of a quitclaim deed from A. to B., " to have and to hold the aforementioned premises to B., his heirs and assigns forever, so that neither I, the said A., nor my heirs, nor any other person claiming from or under me, shall or will, by any way or means, have, claim or demand any right or title to the aforesaid premises," constitute a covenant of warranty or quiet enjoyment against all persons claiming under or from A. If, therefore, A. had previously conveyed the land to C., by deed of warranty in the usual form, and B. brings a writ of entry to recover the land from C., A. is a competent witness for B. in the trial of the case, his interest on one side being counterbalanced by his interest on the other.

WRIT OF ENTRY to recover a parcel of land in Taunton.

The following is the report of the judge who tried the case at the last April term: The demandant gave in evidence a quitclaim deed of the demanded premises, made by Josiah Presbrey to Simeon Presbrey, dated October 7th 1824, and a deed of the same (which was made part of the report) from said Simeon Presbrey to the demandant, dated September 20th 1830, which was duly acknowledged, and was recorded on the 5th of October 1838.

The tenant claimed the demanded premises under a deed from said Simeon Presbrey to her, dated December 16th 1826, and offered said deed in evidence. This was objected to by the demandant, on the ground that the paper offered did not purport, upon its face, to be a deed. On inspection, it appeared to be a deed of warranty, in the usual form, signed by Simeon Presbrey, and by his wife, who relinquished dower in the premises, and recorded on the 16th of April 1844; but the signatures to the deed had been erased by a pen, which had been passed over them.

Elihu Kelton, one of the subscribing witnesses to this deed, testified that he witnessed its execution, and that A. Field

the other subscribing witness, was dead ; that "the erasures were not then there;" that Simeon Presbrey and his wife, and Josiah Presbrey and his wife, were present at the execution of the deed ; that it was executed at the house of Josiah Presbrey in Dorchester, and that Simeon Presbrey then lived in Canton ; that he (the witness) did not know how the erasures were made, but that he had a conversation with Simeon Presbrey concerning the deed.

Josiah Presbrey testified that he was a son of the tenant, and was twenty seven years old about a month before the trial ; that he remembered to have seen this deed several times, when he was a boy, and before the year 1830, at Sharon, where his parents lived ; that it was in the till of a chest which stood in his parents' bedroom, where he also slept; that his father kept his papers in a trunk in the same chest ; that his mother had some things in the chest ; that this deed was wrapped in an envelope, and was by itself in the till; and that there were no erasures in it, nor any mutilation.

Ann J. Briggs testified that she saw this deed eight or nine years before the trial ; that she went with the tenant, at her request, to the house of Simeon Presbrey; that the tenant asked him if he had her deed ; that he said he did not know whether he had it or whether it had gone to the records; that he looked for it, and found it among his papers, and handed it to the tenant ; that the tenant and the witness then went to the house of the witness, and there the deed was opened and read ; that it was then found to be mutilated, as it now appears ; that the tenant asked the husband of the witness what would be the effect of the erasures, and that he said he did not know, but supposed they spoiled the deed.

Some evidence was introduced, tending to show the demandant's knowledge of the fact that the tenant had held a deed from Simeon Presbrey before the date of said Simeon's deed to him, and that such deed had been given up.

The tenant's counsel then offered to read to the jury the deed from said Simeon to her ; but it was objected to, on the ground that the tenant should first show how the cancellation occurred. And the deed was ruled to be inadmissible.

The tenant then offered to show, by the testimony of said Simeon Presbrey, the facts in relation to the mutilation of the deed. The demandant objected, that said Simeon was not a competent witness, he being interested in consequence of the covenants made by him in said deed ; and he was excluded.

The tenant then offered to give evidence of the declarations of said Simeon, in order to show the manner in which the mutilation or cancellation of the deed was effected. This evidence was objected to by the demandant's counsel, and was excluded.

A verdict for the demandant was then taken by consent, which is to be set aside, and a new trial granted, if the above testimony was competent, or if said deed was admissible in evidence.

*Eliot,* for the tenant.

*Coffin,* for the demandant.

The opinion of the court was delivered at October term 1845.

W ILDE, J.   Each party in this case claims title under Simeon Presbrey ; and the question at the trial was, which of the parties had the elder and better title. The demandant gave in evidence a quitclaim deed of the demanded premises to him, from the said Presbrey, dated September 20th 1830, duly acknowledged, and recorded October 5th 1838. The tenant then offered in evidence a deed to her of the premises, dated December 16th 1826.   On inspection, it appeared that the signatures of the said Presbrey and his wife had been erased ; and it was proved, by the testimony of Ann J. Briggs, that this erasure had been made before the deed was recorded.   She testified, among other things, that the deed was found mutilated eight or nine years before the trial, that is, in 1835 or 1836.   It was contended that the testimony of this witness (which is fully stated in the report of the judge who tried the case) furnished sufficient evidence that the deed was cancelled with the consent of the tenant.   But it was decided that the deed was not admissible.   And we are all of opinion that this decision is well founded ; especially as the deed to the tenant was not recorded until long after the recording of the deed to the demandant.   It is clear, therefore, that the tenant's title

could not prevail against the demandant, whether his deed were cancelled or not, unless it could be proved that the demandant, when he purchased, had notice of a previous valid and subsisting conveyance to the tenant. No such evidence was offered at the trial. All that was offered to be proved was, that the demandant had knowledge of the fact that the tenant had held a deed from said Simeon Presbrey, before his deed to the demandant, and that such deed had been given up. The demandant, therefore, might well presume that the deed to the tenant had been cancelled, especially as for many years it had remained unregistered. *Farnsworth* v. *Childs*, 4 Mass. 640. *Trull* v. *Bigelow*, 16 Mass. 406.

To obviate the objections to the admission of the deed to the tenant, her counsel offered to show, by the testimony of the said Simeon Presbrey, the facts in relation to the mutilation of the deed. But this witness was objected to as incompetent, in consequence of the covenants contained in his said deed ; and on this ground he was excluded. It is argued, that the witness was interested to make it appear that the deed was cancelled, or the signatures erased, with the knowledge and consent of the tenant; for if so, he would not be liable on his warranty to the demandant ; and, by setting up this deed, he might be liable. But there is a fallacy in this argument; because, if the witness should testify that the deed was mutilated with the consent of the tenant, he might still be liable on his covenant of warranty ; for in an action on that covenant, the demandant might, perhaps, prove the contrary by the witness's own declarations, which would be competent evidence in that action, although not so in this.

There is, however, another objection to the ruling at the trial, which we think well founded. It is not stated, in the report of the case, that the deed to the demandant contained any covenant of warranty ; and it has been argued by counsel, on the assumption that it was a mere quitclaim deed ; but on looking into that deed, we find that it contains an express covenant of warranty, or for quiet enjoyment, against all persons claiming from or under the said Simeon Presbrey. The words of the

nabendum are, " to have and to hold the aforementioned prem-
ises to the said Nathaniel Newcomb, his heirs and assigns for-
ever ; so that neither I, the said Simeon Presbrey, nor my heirs,
nor any other person or persons claiming from or under me,
shall or will, by any way or means, have, claim 'or demand any
right or title to the aforesaid premises." That this clause in
the deed amounts to a covenant of warranty, or of quiet enjoy-
ment, against all persons claiming title under or from Simeon
Presbrey, cannot admit of a doubt. To constitute a covenant,
it is not necessary that the word covenant, or any other par-
ticular word or words should be made use of ; for any words in
a deed, in what part soever found, from which the intent of the
parties to enter into an engagement can be collected, are suffi-
cient for that purpose. Bac. Ab. Covenant, A. 3 Wooddeson,
86, 87. 2 Stephens Nisi Prius, 1057. Thus these words,
in the lease of mills, " and the lessee shall repair the mills as
often as need shall require, and shall leave them sufficiently
repaired at the end of the term," import an express covenant
1 Rol. Ab. 518. So in *Cramer* v. *Bradshaw*, 10 Johns. 484,
where one, by a bill of sale, granted " a slave, being of sound
wind and limb, and free from all disease," it was held that
these were not words of description, but a covenant of warranty.

This being the clear construction and import of the deed to
the demandant, it follows that the witness was equally inter-
ested on both sides of the cause. His interest in favor of the
tenant was counterbalanced by his interest in favor of the de-
mandant, he being liable on his covenant of warranty, which-
ever party should prevail. A new trial, therefore, must be
granted. It will not, however, avail the tenant, unless it can be
proved, not only that the erasures of the signatures to the deed
were made without the knowledge and consent of the tenant,
but that this fact was known to the demandant at the time of his
purchase. The demandant's title must prevail, unless it can be
effectually impeached, on the ground of fraud ; and certainly,
from the evidence reported, no fraud can be imputed to the
demandant.

*New trial granted*